**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **PENNSYLVANIA LUMBERMENS MUTUAL INSURANCE COMPANY,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CIVIL ACTION 15-0071-WS-B** |
| **D.R. HORTON, INC. – BIRMINGHAM, *et al.*,** | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter comes before the Court on defendant Nationwide Insurance Company's Motion to Dismiss (doc. 90) and plaintiff's Motion to Consolidate (doc. 111). Both intertwined motions have been briefed and are now ripe for disposition.

**I. Relevant Background.**

Plaintiff, Pennsylvania Lumbermens Insurance Company ("PLM"), brought this insurance declaratory judgment action against D.R. Horton, Inc. – Birmingham ("D.R. Horton"); Chris Saddler, Administrator of the Estate of Roberto Campus Leco, deceased; and five other insurance companies, one of which is Nationwide Insurance Company ("Nationwide"). The present motion practice relates to whether and in what context the relative obligations (if any) of PLM and Nationwide will be determined at this time.

According to PLM's Second Amended Complaint (doc. 59), this insurance dispute has its origins in an underlying action styled *Chris Saddler, et al. v. Mega Construction Co., Inc., et al.*, pending in the Circuit Court of Baldwin County, Alabama (the "*Saddler* Action"). The *Saddler* Action arose from the death of Roberto Campos Leco, who apparently was working for Olmedo Construction Company ("Olmedo") when a truss system collapsed at a residential construction site in Daphne, Alabama, on or about May 16, 2013. (Doc. 59, Exh. 4, ¶¶ 13-14.) The *Saddler* Action plaintiffs bring claims against Olmedo, Mobile Lumber & Building Materials, Inc. ("Mobile Lumber") and various other contractors and subcontractors on the ill-fated construction

project. In particular, Saddler (as administrator of Leco's estate) sued Olmedo for worker's compensation indemnity benefits and sued D.R. Horton (alleged to be the owner of the house and the general contractor for the project) on theories of negligent or wanton failure to provide a safe work environment for Olmedo employees, as well as negligent or wanton hiring of unqualified contractors (including, *inter alia*, Olmedo) to perform framing and supervisory services on the project. (*Id.*, ¶¶ 11-17, 39-53.)[1] The *Saddler* Action also included a claim against Mobile Lumber for negligently supplying a defective and unreasonably dangerous truss system for use on the project. (*Id.*, ¶¶ 54-58.)[2] On March 24, 2015, Circuit Judge Robert Wilters granted Mobile Lumber's motion for summary judgment and dismissed all claims against that defendant with prejudice. (Doc. 59, Exh. 7.) The remaining portions of the *Saddler* Action are apparently still ongoing in Baldwin County Circuit Court at this time.

The relationship between the *Saddler* Action and the pending motions in this declaratory judgment action is as follows: At the time of Leco's workplace accident, PLM had in force a commercial general liability insurance policy issued to Mobile Lumber. (Doc. 59, ¶ 10.) Of course, Mobile Lumber is no longer a defendant in the *Saddler* Action; however, PLM brought this action seeking a declaration that it owes no insurance coverage (indemnity or defense obligations) to D.R. Horton in the *Saddler* Action as an "additional insured" under the subject policy. (*Id.*, ¶ 13.) Indeed, the operative pleading in this case specifically alleges that "D.R. Horton has demanded insurance coverage from PLM as an additional insured under the PLM policy issued to Mobile Lumber for any claims, fines or penalties and/or judgments against D.R. Horton in the" *Saddler* Action. (*Id.*, ¶¶ 13(d), 15.) In this action, PLM seeks a judicial declaration as to "whether PLM is obligated to provide a defense or indemnity to D.R. Horton in the" *Saddler* Action. (*Id.*, ¶ 17.)

In addition to demanding declaratory judgment concerning its coverage obligations (if any) to D.R. Horton in the *Saddler* Action, PLM later joined several other insurers as defendants

---

[1] A Third Amended Complaint later filed in the *Saddler* Action merely corrected a technical error in the name of defendant D.R. Horton to conform to its full name used in this litigation, to-wit: D.R. Horton, Inc. – Birmingham. (*See* doc. 59, Exh. 5.)

[2] A Fourth Amended Complaint later filed in the *Saddler* Action merely corrected a technical error in the name of defendant Mobile Lumber to conform to its full name as set forth above, to-wit: Mobile Lumber & Building Materials, Inc. (*See* doc. 59, Exh. 6.)

in this action via its Second Amended Complaint filed on September 21, 2015.[3] Among those insurers named as defendants herein is Nationwide. PLM's pleading indicates that "[i]t is believed" Nationwide issued an insurance policy to Olmedo "with D.R. Horton named as an additional insured." (*Id.*, ¶ 5.) On that basis, PLM requests in its pleading that, if PLM is found to owe coverage obligations to D.R. Horton in the *Saddler* Action, "the court specifically declare what excess or *pro rata* share of the defense and litigation expenses PLM, … Nationwide …," and the other insurer defendants "are obligated to pay." (*Id.*, at 26.) In other words, PLM has initiated this declaratory judgment action against D.R. Horton seeking a ruling that it has no duty to defend or indemnify D.R. Horton in the *Saddler* Action. If, and only if, a declaration adverse to PLM is issued on the coverage question, then PLM wants this Court to declare how the defense and litigation expenses in the *Saddler* Action are to be divided up between and among PLM, Nationwide, and a stable of four other insurer defendants (Assurance Company of America, Southern Owners Insurance Company, Essex Insurance Company, and AIG Specialty Insurance Company). (*Id.*; *see also* doc. 73.) In support of its desired apportionment of such insurance contributions, PLM includes in its Second Amended Complaint a conclusory allegation that "PLM contends that … Nationwide Insurance Company of America … [has] a duty to insure and indemnify D.R. Horton, and PLM's policy is in excess to these other carriers." (Doc. 59, ¶ 16.)

Faced with this unorthodox procedural posture, Nationwide filed a Motion to Dismiss (doc. 90) in which it argued that (i) PLM's claims against Nationwide should be dismissed because Nationwide has brought a declaratory judgment action of its own (the "*Nationwide* Action") against D.R. Horton pertaining to its coverage obligations in the *Saddler* Action;[4] and

---

[3] The insurer defendants (or, at least, most of them, including Nationwide) were first joined in this case via an Amended Complaint (doc. 45) filed on August 31, 2015. Prior to that date, this case was a straightforward declaratory judgment action between an insurer (PLM) and its putative insured (D.R. Horton) over coverage responsibilities in an underlying wrongful death suit. The subsequent joinder of the other insurance company defendants at the end of August ratcheted up the complexity of these proceedings considerably, leading directly to the pending Motion to Dismiss and Motion to Consolidate relating to PLM's claims against Nationwide.

[4] Nationwide is correct that such a parallel declaratory judgment action exists; however, Nationwide's Motion inaccurately recites the case number for that action as CV-1:15-cv-0071-WS-B (*see* doc. 90, at ¶ 3), which is in fact the case number for this PLM declaratory (Continued)

(ii) PLM's Second Amended Complaint fails to state an actionable claim against Nationwide "because there is no contractual or other relationship" between them. (Doc. 90, ¶¶ 3-4.) In an unexpected twist, PLM responded by filing a Motion to Consolidate this case with the *Nationwide* Action, reasoning that consolidation is warranted "because [the *Nationwide* Action] concerns the same underlying questions of fact and law, will unite all necessary parties in one action, and will conserve resources for the parties and the Court." (Doc. 111, at 11.) To the extent that its request for consolidation may be denied, PLM nonetheless opposes Nationwide's Motion to Dismiss, reasoning that it has indeed stated a cognizable claim for relief against that defendant.

**II. Analysis of Motion to Consolidate.**

Plaintiff's Motion to Consolidate is governed by Rule 42(a) of the Federal Rules of Civil Procedure, which authorizes a district court to consolidate actions or to "issue any other orders to avoid unnecessary cost or delay" when multiple actions before it "involve a common question of law or fact." Rule 42(a), Fed.R.Civ.P. The rule "is permissive and vests a purely discretionary power in the district court." *Young v. City of Augusta, Ga. Through DeVaney*, 59 F.3d 1160, 1168 (11th Cir. 1995) (citations omitted). What this means is that "the mere existence of common issues, although a prerequisite to consolidation, does not mandate a joint trial." *Northstar Marine, Inc. v. Huffman*, 2014 WL 4167019, *2 (S.D. Ala. Aug. 21, 2014) (citation omitted). "The trial court's managerial power is especially strong and flexible in matters of consolidation." *Center for Biological Diversity, Inc. v. BP America Production Co.*, 704 F.3d 413, 432 (5th Cir. 2013) (citations omitted). "In exercising that broad discretion, district courts must weigh the risk of prejudice, confusion and delay wrought by consolidation against the risk of inconsistent rulings on common questions, the burden on the parties and the court, the length of time, and the relative expense of proceeding with separate lawsuits." *Northstar Marine*, 2014 WL 4167019, at *2 (citations omitted).

judgment action, not the separate Nationwide case. The Nationwide declaratory judgment action bears Civil Action No. 15-0351-CG-N, and was filed in this District Court on July 8, 2015. In its Complaint brought solely against D.R. Horton, Nationwide requests a judicial declaration identifying "what duties, if any, Nationwide owes under the Policy to defend [D.R. Horton] or to indemnify or pay any judgment that may be rendered against [D.R. Horton] as a result of the allegations in the Underlying Action." (Civil Action No. 15-0351-CG-N, doc. 1, at 11.)

The threshold inquiry on a Rule 42(a) motion is whether common questions of law or fact are joined in the two lawsuits for which consolidation is sought. PLM would answer this question in the affirmative, reasoning as follows:

> "In the separate actions, PLM and Nationwide both seek a declaration from the Court that it is not liable for D.R. Horton's costs of defense and indemnity as an additional insured. The central issues in both suits are: 1) is there coverage, and 2) if so, how much of a share is owed between the insurers. Ultimately, the two actions present the same questions of fact and law."

(Doc. 111, at 5.) While superficially appealing, these assertions do not withstand scrutiny. To be sure, coverage questions relating to the workplace accident that resulted in the death of Roberto Campos Leco are indeed at the heart of both this action and the *Nationwide* Action. But plaintiff has not shown – and the record reveals no basis for concluding – that the coverage questions in each lawsuit are identical. All appearances are to the contrary.

The PLM lawsuit raises coverage questions under a different insurance policy than that at issue in the *Nationwide* Action. PLM's policy was written for a different insured (Mobile Lumber) than Nationwide's policy (Olmedo). There has been no showing by PLM that the respective insurance policies are similar, much less identical, in relevant respects for the challenged coverage issues. As repeatedly asserted in the Second Amended Complaint, PLM's primary argument against coverage for D.R. Horton is that the *Saddler* Action "does not assert claims against D.R. Horton arising from Mobile Lumber's acts or omissions or Mobile Lumber's agent's or servant's acts or omissions." (Doc. 59, at 17, 20.) PLM also invokes a state statute, Alabama Code § 6-5-501, that it claims insulates it from coverage obligations to D.R. Horton in the *Saddler* Action; and seeks refuge under an endorsement limiting coverage to acts or omissions in performance of Mobile Lumber's ongoing operations for D.R. Horton in Hemet, California. (*Id.* at 18-19.) By contrast, the complaint in the *Nationwide* Action alleges that Nationwide does not owe coverage to D.R. Horton because, *inter alia*, (i) coverage does not apply to work that has not yet been completed or abandoned; (ii) a worker's compensation exclusion precludes coverage; (iii) an employer's liability exclusion precludes coverage; and (iv) D.R. Horton failed to provide timely and sufficient notice. (*See* Civil Action No. 15-0351-CG-N, doc. 1, at ¶¶ 20-27.) Plainly, these coverage issues in the *Nationwide* Action are completely distinct from those interposed by PLM here. On this showing, the Court is not convinced that

there is even modest overlap between the insurance coverage questions joined in PLM's declaratory judgment action and those at issue in the *Nationwide* Action.[5]

Even assuming that such common questions exist (and they may, given that both suits relate to the same underlying loss, similar policy provisions may come into play, and so on),[6] the Court perceives negligible benefit in terms of efficiency or expense to consolidating these two actions. There is no reason, for example, to believe that both cases will turn on the same specific findings of fact about what happened at the construction site, or on the interpretation and application of the same policy language. While the advantages of consolidation here appear meager, the potential harms loom large. If anything, combining the PLM declaratory judgment action with the *Nationwide* Action would engender confusion and force the court and litigants alike to go through the cumbersome process of distinguishing between two different insurance policies (and the divergent coverage defenses presented) at every turn in the analysis. Delays to adjudication of one insurer's claims for declaratory judgment would be inevitable as the Court worked through the other insurer's completely separate and independent claims for declaratory judgment. In short, PLM has not met its burden of making a satisfactory showing that consolidation of these two insurance declaratory judgment actions will promote the objectives of

---

[5] Nor does the Court perceive any support in the pleadings for PLM's characterization that a "central issue[] in both suits" is "how much of a share is owed between the insurers." (Doc. 111, at 5.) To be sure, PLM has asked the undersigned in this case to sift through "what excess or *pro rata* share of the defense and litigation expenses" should be borne by each of five insurance companies. (Doc. 59, at 26.) But Nationwide has requested no comparable relief or declarations in the *Nationwide* Action. Nowhere in the pleadings of that case has Nationwide requested a judicial declaration apportioning coverage responsibilities among multiple insurers if Nationwide is found to owe duties of defense or indemnification to D.R. Horton in the *Saddler* Action. Not only is the "insurer share" issue not a "central issue" in the *Nationwide* Action, but it is not an issue in that case at all; therefore, it cannot qualify as a common question of law or fact that might support consolidation pursuant to Rule 42(a).

[6] Although plaintiff has not so argued in support of its Motion to Consolidate, the most plausible "common issue" appears to be that Nationwide's coverage obligations to D.R. Horton would be litigated both in the *Nationwide* Action and as part and parcel of the "insurer share" issue in the PLM case. After all, if Nationwide owed no coverage to D.R. Horton in the *Saddler* Action, then it could not be required to contribute to PLM's coverage obligations in this suit. Of course, that theory presupposes that PLM will be found to owe coverage to D.R. Horton, which has not happened and might never happen. Thus, this purported "common issue" between the two cases may be illusory because it might never be reached in this case.

efficiency, judicial economy, convenience, or meaningful savings of litigant or judicial resources. *See generally Clayton v. District of Columbia*, 36 F. Supp.3d 91, 94 (D.D.C. 2014) ("The party requesting consolidation bears the burden of showing that the balance weighs in favor of consolidation."). Accordingly the Motion to Consolidate (doc. 111) is **denied**.[7]

**III. Analysis of Motion to Dismiss.**

Nationwide seeks dismissal of PLM's claims against it pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief can be granted. Among Nationwide's

---

[7] In so concluding, the Court has considered and rejected PLM's two additional arguments for consolidation. First, PLM invokes the so-called "first-filed rule" to argue that this action has priority (in a non-technical sense) over the *Nationwide* Action because it was filed first. *See generally Collegiate Licensing Co. v. American Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013) ("The first-filed rule provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case."). In applying this rule, PLM does not address the critical fact that, while PLM filed suit before Nationwide did, PLM did not name Nationwide as a defendant or seek declarations apportioning liability "shares" among different insurers (the claim that apparently animates PLM's Motion to Consolidate) until filing an amended pleading on August 31, 2015, nearly two months <u>after</u> Nationwide commenced its declaratory judgment action against D.R. Horton in Civil Action No. 15-0351-CG-N on July 8, 2015. Thus, it is not at all clear that the "first-filed rule" would apply here, even if consolidation were appropriate. Second, plaintiff's assertion that "[t]he PLM and Nationwide actions should be consolidated because necessary and indispensable parties should be included in one action" (doc. 111, at 7) misses the mark. Plaintiff uses the terminology of Rule 19, which governs joinder, not consolidation. Furthermore, Nationwide has already been joined as a defendant in this action, so if PLM were correct that Nationwide is a necessary and indispensable party to this case, consolidation would be unnecessary to effectuate that result because Nationwide is already here, joined as a party defendant via the First and Second Amended Complaints. Certainly, PLM has neither argued nor demonstrated that PLM is a necessary or indispensable party to the *Nationwide* Action. Nor would consolidation (as opposed to a motion to intervene pursuant to Rule 24) be the appropriate procedural vehicle to vindicate any such interest that PLM might have in being heard on insurance coverage issues between Nationwide and D.R. Horton. At any rate, all appearances are that the court can accord complete relief in the *Nationwide* Action concerning the defense and indemnity obligations (if any) that Nationwide may owe to D.R. Horton in the *Saddler* Action without PLM's presence. PLM reasons that if separate actions persist, "in each action the court would have to determine the amount of loss and coverage for the other companies." (Doc. 111, at 7.) There is simply no reason why this would be true. Certainly, nothing in the *Nationwide* Action Complaint suggests that Nationwide is asking the court to fix the amount of loss and coverage obligations for each and every other insurance policy that might apply to Leco's wrongful death action. Rather, the question being litigated in the *Nationwide* Action is the fact of coverage, not the apportionment of contributions among a fistful of insurers.

arguments for dismissal are that "there is no basis for bringing a cause of action against Nationwide" and that PLM's claims are "premature and unnecessary at this time." (Doc. 90, at 3.) Nationwide insists that "a sufficient controversy does not exist" to support PLM's claims against it at present. (Doc. 114, at 9.) After careful review of the briefs on the Motion to Dismiss, the Court concludes that dismissal is warranted for two distinct and independent reasons.

***A. Twombly* Pleading Defect.**

As an initial matter, PLM's Second Amended Complaint fails to comport with minimum pleading requirements as to the claims against Nationwide. To withstand Rule 12(b)(6) scrutiny and satisfy Rule 8(a), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," so as to "nudge[] [its] claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). "This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012). Thus, minimum pleading standards "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. As the Eleventh Circuit has explained, *Twombly* / *Iqbal* principles require that a complaint's allegations be "enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted). "To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations … but must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010) (citations and internal quotation marks omitted).

Under any reasonable application of these principles, PLM's complaint does not satisfy baseline pleading requirements with respect to defendant Nationwide. The sum total of the Second Amended Complaint's factual allegations concerning Nationwide is as follows: (i) Nationwide is "believed" to have issued an insurance policy to Olmedo Construction, Inc., as to which D.R. Horton is an additional insured (doc. 59, ¶ 5); (ii) if PLM is deemed to owe a duty to

defend or indemnify D.R. Horton, then PLM asks the Court to declare "what excess or *pro rata* share of the defense and litigation expenses" Nationwide must pay (*id.* at 23); and (iii) "PLM contends that … Nationwide … [has] a duty to insure and indemnify D.R. Horton, and PLM's policy is in excess" to that of Nationwide (*id.*, ¶ 16). As framed by this universe of allegations, PLM's pleading against Nationwide is a conclusory claim that flunks *Twombly* / *Iqbal* review. PLM has not pleaded any facts that might reveal a plausible claim for relief against Nationwide. From reviewing the Second Amended Complaint, it is impossible to discern why PLM "contends" that Nationwide owes coverage to D.R. Horton in the *Saddler* Action, much less why PLM "contends" that its own policy is excess to Nationwide's, or what (if any) facts or policy provisions PLM might be relying on as grounds for those unvarnished "contentions." Plaintiff has furnished nothing more than a blanket statement that this is so.

Rule 8(a), as construed by the Supreme Court in *Twombly* and *Iqbal*, requires much more in a pleading than a bald, conclusory claim that "I am entitled to relief because I say so," which is effectively all that PLM has pleaded here. As such, the Second Amended Complaint is deficiently pleaded against Nationwide as a matter of law, and the Motion to Dismiss would be properly granted on *Twombly* / *Iqbal* grounds.

***B.*** **Discretion Not to Hear Declaratory Judgment Action.**

Plaintiff's Second Amended Complaint also suffers from a more fundamental defect, insofar as it relates to PLM's claims against Nationwide. This action is brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, which authorizes – but does not require – federal courts to declare the rights and legal relations of interested parties. *See Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (Declaratory Judgment Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so"). Indeed, the Act is properly "understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* at 287 (citations omitted). The proper exercise of such discretion is achieved on a case-by-case basis, turning on "considerations of practicality and wise judicial administration." *Id.* at 288; *see also Aetna Ins. Co. v. Transamerica Ins. Co.*, 262 F. Supp. 731, 732 (E.D. Tenn. 1967) ("The determinative factor is

whether the declaratory action will probably result in a just and more expeditious and economical determination of the entire controversy.").

Upon careful consideration, the Court exercises this discretion not to declare the rights and legal relations as between PLM and Nationwide for "what excess or *pro rata* share of the defense and litigation expenses" each might bear in the *Saddler* Action. Here is why: As Nationwide observes, the relief PLM seeks in this action is a "nebulous possible future determination as to *pro rata* shares between various insurance companies" (doc. 90, at 7), and "a determination of how the insurance companies' potential contributions be divided is premature and unnecessary at this time" (*id.* at 3). The crux of PLM's claim against Nationwide is a request for judicial declaration of "how much of a share is owed between the insurers" (doc. 111, at 5) for coverage of D.R. Horton's liability in the *Saddler* Action. To date, however, there has been no finding of liability for D.R. Horton, and certainly no judgment entered against D.R. Horton, in the *Saddler* Action. Nor has there been a finding that PLM owes any coverage to D.R. Horton. The apportionment issues that plaintiff is asking this Court to referee as between PLM and Nationwide will never materialize unless and until (i) PLM is found to owe coverage to D.R. Horton in the *Saddler* Action (which PLM steadfastly denies), and (ii) D.R. Horton is held liable in the *Saddler* Action. Neither of these events has occurred, and it is entirely possible that neither might ever occur. Thus, it strikes the Court as profoundly inefficient, unhelpful and ill-advised to devote substantial litigant and judicial resources to a declaratory judgment action aimed at determining what the apportionment of the insurance contributions should be as between PLM and Nationwide if D.R. Horton is someday hit with an adverse judgment in the *Saddler* Action and PLM is found to owe insurance coverage to D.R. Horton. At the moment, the question that PLM is asking this Court to adjudicate as to Nationwide is merely theoretical, academic and conjectural, based on a set of contingencies that have not happened and might never come to pass.[8]

[8] While the foregoing discussion address apportionment of insurance indemnification obligations to D.R. Horton in the *Saddler* Action, the same reasoning holds true with respect to the duty to defend. The Second Amended Complaint is devoid of any allegation that PLM is presently furnishing a defense to D.R. Horton in the *Saddler* Action. To the contrary, D.R. Horton pleads in its Counterclaim that PLM "has not replied to Horton's request or otherwise provided it with a defense to the underlying action." (Doc. 82, ¶ 20.) PLM does not appear to dispute the assertion that it has not, in fact, furnished a defense to D.R. Horton. For (Continued)

Courts have emphatically resisted attempts by litigants to entangle them in such theoretical, conjectural matters under the Declaratory Judgment Act. For example, in *American Fidelity & Cas. Co. v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co.*, 280 F.2d 453 (5th Cir. 1960), the plaintiff insurer sued a defendant insurer seeking a declaratory judgment that the defendant would be responsible for providing coverage to an additional insured under both policies (without *pro rata* apportionment) if that insured were ultimately held liable in an underlying damages suit. The former Fifth Circuit opined that questions such as the insurers' respective liabilities to the insured (*i.e.*, "whether Pennsylvania has primary and American excess coverage, whether both are liable pro rata, or at all," and so on) were merely "academic" problems and that "it is not the function of a United States District Court to sit in judgment on these nice and intriguing questions which today may readily be imagined, but may never in fact come to pass." *Id.* at 461. On that basis, the *American Fidelity* court affirmed the dismissal of the complaint without prejudice because "the asserted controversy may never be, but when it is or what it is when it is, a proper court can then resolve those tangible controversies as the case might require. The District Court was careful to make his dismissal without prejudice to those further rights, and it was well within its considered judicial discretion to decline to express legal opinions on academic theoreticals which might never come to pass." *Id.* The *American Fidelity*

---

now, then, PLM is neither providing a defense to D.R. Horton nor paying its defense bills; therefore, PLM's demand that this Court declare whether other insurers would have to share in those defense costs if PLM is ultimately ordered to defend D.R. Horton is purely academic at this time, based on a set of hypotheticals that may or may not ever take place. To the extent that PLM is asking the Court to declare the apportionment of defense costs that should be borne among it, Nationwide and other insurers, that requested declaration is theoretical unless and until (i) PLM is found to owe defense obligations to D.R. Horton in the first place (which PLM has denied and continues to deny), and (ii) PLM disagrees with other insurers as to the appropriate apportionment of defense costs at that time (which the Second Amended Complaint does not allege ever to have happened, as there is no allegation that PLM has conferred with other insurers over defense cost apportionment at all). Stated differently, it is an open question at this time whether PLM has any duty to defend D.R. Horton at all in the *Saddler* Action. Entertaining full-fledged, resource-intensive, multilateral litigation as to whether some other insurer would be required to share the burden of those defense costs with PLM, and if so how much, if indeed PLM is someday found to have such a duty to defend would be grossly inefficient and wasteful because, as of right now, the question of apportionment of defense costs among insurers other than PLM is of no more than speculative, academic interest.

holding was "predicated on the traditional discretion of federal courts exercising jurisdiction over declaratory judgment actions." *Edwards v. Sharkey*, 747 F.2d 684, 686 (11th Cir. 1984). The lesson from *American Fidelity* is that courts are "cautioned against the exercise of jurisdiction in suits for declaratory judgment when the question of the apportionment of insurance coverage may never arise due to the lack of a judgment establishing the liability of the insured." *Id.*[9]

---

[9] Other courts have reached similar conclusions. *See, e.g., Century Indem. Co. v. McGillacuty's, Inc.*, 820 F.2d 269, 270 (8th Cir. 1987) ("When an insured's liability has not yet been determined, a court should refrain from deciding which insurance company is liable for coverage, especially when … they are arguing about which is the primary carrier and which is the excess carrier."); *Travelers Indem. Co. v. Standard Acc. Ins. Co.*, 329 F.2d 329, 332 (7th Cir. 1964) (where one insurer sought declaration that another insurer was obligated to pay all sums that might be awarded against insured in personal injury action, opining that issue "is purely speculative and therefore not proper for decision in this declaratory judgment action"); *Nationwide Mut. Ins. Co. v. Fidelity & Cas. Co. of N.Y.*, 286 F.2d 91, 92 (3rd Cir. 1961) ("But the trial judge was right in refusing to settle all the relations of the insurers among themselves. … Each of these companies has insured some one or more of the persons involved in this Butler County litigation. How that litigation will come out nobody knows at this time. … [A]t this time nobody is under any liability to pay. Federal courts are not authorized to give advisory opinions and if we told the insurance companies their respective rights and duties against each other we certainly would be giving an advisory opinion.") (footnotes omitted); *Employers Mut. Cas. Co. v. All Seasons Window & Door Mfg., Inc.*, 387 F. Supp.2d 1205, 1211-12 (S.D. Ala. 2005) (following *American Fidelity* and observing that "any number of eventualities could prevent problems now academic from becoming actual," such as "the insured might never suffer an adverse verdict" or "the underlying action might narrow or even eliminate any coverage question" based on the nature of the verdict) (citations and internal marks omitted); *Companion Assurance Co. v. Alliance Assurance Co.*, 585 F. Supp. 1382, 1385 (D.V.I. 1984) (dismissing declaratory judgment action between insurers where "liability has not been established and a ruling as to the priorities of coverage of the other insurance carriers would amount to an advisory opinion"); *Government Emp. Ins. Co. v. Keystone Ins. Co.*, 408 F. Supp. 1185, 1188 (E.D. Penn. 1975) (dismissing declaratory judgment action between two insurers as to whose coverage was primary, reasoning that in the event liability was found in underlying proceedings, "GEICO may at that time seek a judicial determination of its claim that Keystone has the primary liability. This is not only the law of this Circuit but appears to be the preferable practice."); *Aetna*, 262 F. Supp. at 733 ("The federal courts have often held that actions for declaratory judgment under the Federal Declaratory Judgment Act should not be entertained where the rights of several insurers are in issue until there has been a judgment against the insured."); *Erie Indem. Co. v. Acuity, a Mut. Ins. Co.*, 2006 WL 2048310, *3-4 (N.D. Ga. July 19, 2006) ("[T]he issue presented in this declaratory judgment action involves a determination of primary versus secondary insurance coverage. … The issue of liability … has not been resolved in the state court action. Thus, insurance coverage, primary or otherwise, has yet to, and may never, become relevant. Yielding to considerations of judicial economy, the Court declines to rule on the coverage issue while the underlying liability action is still pending.").

Cutting through all the rhetoric from all the caselaw, the fundamental point is quite straightforward. PLM has sued Nationwide seeking a declaration that, if PLM is found to owe coverage obligations to D.R. Horton in the *Saddler* Action, and if D.R. Horton is found liable in the *Saddler* Action, Nationwide is responsible for paying certain of those amounts. Such a dispute may satisfy the "case or controversy" requirements of the Article III, Section 2 of the U.S. Constitution and the Declaratory Judgment Act,[10] but it is not the kind of case or controversy that federal courts should exercise their discretion under the Act to hear. *See, e.g., Aetna*, 262 F. Supp. at 732 ("An academic or theoretical declaration by this Court concerning future controversies that may never arise is not contemplated by the Declaratory Judgment Act.") (citation omitted). If no adverse judgment is ultimately entered against D.R. Horton in the *Saddler* Action, then this declaratory judgment action as to which insurer(s) should pay that judgment and in what shares would be a waste of time. Similarly, if this Court were to find that PLM owes no indemnity obligation to D.R. Horton in the *Saddler* Action, then protracted, hard-fought litigation over PLM's claims that Nationwide must shoulder all or part of PLM's indemnity burden would be unhelpful and unnecessary.[11]

In short, it is the undersigned's opinion that PLM's declaratory judgment action against Nationwide will not probably result in a just and more expeditious and economical determination of the entire controversy, and that considerations of practicality and wise judicial administration

---

[10] "Congress limited federal jurisdiction under the Declaratory Judgment Act to actual controversies, in statutory recognition of the fact that federal judicial power under Article III, Section 2 of the United States Constitution extends only to concrete 'cases or controversies.'" *Atlanta Gas Light Co. v. Aetna Cas. and Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995) (citation omitted).

[11] The same is true on the duty to defend issue. If PLM is held in this case not to owe a duty to defend D.R. Horton in the *Saddler* Action, then PLM's litigation with Nationwide over how those defense costs should be apportioned between them would be of no consequence. The analysis might differ if PLM were paying D.R. Horton's defense costs at this time and wanted a declaration that Nationwide was responsible for reimbursing all or part of those costs; however, that is not the operative scenario. The Court's understanding is that PLM is presently not furnishing a defense to D.R. Horton, and that D.R. Horton has demanded a defense from multiple other insurance carriers, in addition to PLM; however, PLM seeks a declaratory judgment that Nationwide should be required to pay all or part of those defense costs if PLM is someday found to owe D.R. Horton a duty to defend (and if such defense costs have not been borne by some other insurer in the meanwhile).

favor not deciding those claims at this time. Under these circumstances, the Court will exercise its discretion under the Declaratory Judgment Act not to declare the rights of PLM and Nationwide as to their respective shares or apportionment of any defense or indemnity obligations that PLM might be found to owe D.R. Horton for any liability that it might ultimately incur in the underlying wrongful death action in state court.

**IV. Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1. Pennsylvania Lumbermens Mutual Insurance Company's Motion to Consolidate (doc. 111) is **denied**;
2. Nationwide Insurance Company's Motion to Dismiss (doc. 90) is **granted**;
3. In exercise of the undersigned's discretion pursuant to 28 U.S.C. § 2201 and given the *Twombly* pleading defect in the Second Amended Complaint, plaintiff's claims for declaratory judgment against Nationwide are **dismissed without prejudice**, provided that nothing herein precludes or limits plaintiff's ability to renew such claims at an appropriate time if and when the underlying issues have advanced to a point where a declaratory judgment as to apportionment of insurance contributions between PLM and Nationwide would be of more than academic or theoretical interest; and
4. The Clerk of Court is directed to **terminate** Nationwide Insurance Company as a defendant in this action.

DONE and ORDERED this 1st day of December, 2015.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE