**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **PENNSYLVANIA LUMBERMENS** | ) | |
| **MUTUAL INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 15-0071-WS-B** |
| | ) | |
| **D.R. HORTON, INC. – BIRMINGHAM,** | ) | |
| ***et al.***, | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter comes before the Court on defendant Assurance Company of America's Motion to Dismiss (doc. 107). The Motion has been briefed and is now ripe for disposition.

**I.      Relevant Background.**

Plaintiff, Pennsylvania Lumbermens Insurance Company ("PLM"), brought this insurance declaratory judgment action against D.R. Horton, Inc. – Birmingham ("D.R. Horton"); Chris Saddler, Administrator of the Estate of Roberto Campus Leco, deceased; and five other insurance companies, one of which is Assurance Company of America ("Assurance").

According to PLM's Second Amended Complaint (doc. 59), this insurance coverage dispute has its origins in an underlying action styled *Chris Saddler, et al. v. Mega Construction Co., Inc., et al.*, pending in the Circuit Court of Baldwin County, Alabama (the "*Saddler* Action"). The *Saddler* Action arose from the death of Roberto Campos Leco, who apparently was working for Olmedo Construction Company ("Olmedo") when a truss system collapsed at a residential construction site in Daphne, Alabama, on May 16, 2013. (Doc. 107, Exh. 2, ¶¶ 12-13.) The *Saddler* Action plaintiffs brought claims against Olmedo, Bethel Engineering, Inc. ("Bethel Engineering") and various other contractors and subcontractors on the ill-fated construction project. In particular, Saddler (as administrator of Leco's estate) sued Olmedo for worker's compensation indemnity benefits and sued D.R. Horton (alleged to be the owner of the house and the general contractor for the project) on theories of negligent or wanton failure to

provide a safe work environment for Olmedo employees, as well as negligent or wanton hiring of unqualified contractors to perform framing and supervisory services on the project. (*Id.*, ¶¶ 11-17, 39-53.) The *Saddler* Action also included a negligence claim alleging that Bethel Engineering had supplied incomplete and inadequate house and truss system drawings for the project in question, in that such drawings (i) lacked a temporary or installation bracing plan, and (ii) were not in Spanish. (*Id.*, ¶¶ 60-63.) On March 24, 2015, Circuit Judge Robert Wilters granted Bethel Engineering's motion for summary judgment and dismissed all claims against that defendant with prejudice. (Doc. 107, Exh. 4.) Certain portions of the *Saddler* Action remain ongoing in Baldwin County Circuit Court at this time.

The relationship between the *Saddler* Action and Assurance's Motion to Dismiss in this declaratory judgment action is as follows: At the time of Leco's workplace accident, PLM had in force a commercial general liability insurance policy issued to Mobile Lumber & Building Materials, Inc., which was one of the contractors on the project and a named defendant in the *Saddler* Action. (Doc. 59, ¶ 10.) After summary judgment was entered in Mobile Lumber's favor, PLM commenced this action seeking a declaration that it owes no insurance coverage (indemnity or defense obligations) to D.R. Horton in the *Saddler* Action as an "additional insured" under the subject policy. (*Id.*, ¶ 13.) Indeed, the operative pleading in this case specifically alleges that "D.R. Horton has demanded insurance coverage from PLM as an additional insured under the PLM policy issued to Mobile Lumber for any claims, fines or penalties and/or judgments against D.R. Horton in the" *Saddler* Action. (*Id.*, ¶¶ 13(d), 15.) In this action, PLM seeks a judicial declaration as to "whether PLM is obligated to provide a defense or indemnity to D.R. Horton in the" *Saddler* Action. (*Id.*, ¶ 17.)

In addition to seeking judicial declaration of its coverage obligations (if any) to D.R. Horton in the *Saddler* Action, PLM later joined several other insurers as defendants in this action via a series of amended complaints.[1] Among those newly added insurer defendants is Assurance,

---

[1] The insurer defendants (or, at least, most of them) were first joined in this case via an Amended Complaint (doc. 45) filed on August 31, 2015. Prior to that date, this case was a straightforward declaratory judgment action between an insurer (PLM) and its putative insured (D.R. Horton) over coverage responsibilities in an underlying wrongful death suit. The subsequent joinder of the other insurance company defendants at the end of August ratcheted up the complexity of these proceedings, leading directly to the pending Motion to Dismiss.

who was joined in this action via PLM's Second Amended Complaint filed on September 21, 2015.  (*See* doc. 59.)  PLM's pleading indicates that "[i]t is believed" Assurance issued an insurance policy to Bethel Engineering "with D.R. Horton named as an additional insured."  (*Id.*, ¶ 4.)  On that basis, PLM requests in its pleading that, if PLM is found to owe coverage obligations to D.R. Horton in the *Saddler* Action, "the court specifically declare what excess or *pro rata* share of the defense and litigation expenses PLM, … Assurance …," and the other insurer defendants "are obligated to pay."  (*Id.*, at 26.)  In other words, PLM has initiated this declaratory judgment action against D.R. Horton seeking a ruling that it has no duty to defend or indemnify D.R. Horton in the *Saddler* Action.  If, and only if, a declaration adverse to PLM is issued on the coverage question, then PLM wants this Court to declare how the defense and litigation expenses in the *Saddler* Action are to be divided up between and among PLM, Assurance, and a stable of other insurer defendants (including Southern Owners Insurance Company, Essex Insurance Company, and AIG Specialty Insurance Company).  (*Id.*; *see also* doc. 73.)  In support of its desired apportionment of such insurance obligations, PLM includes in its Second Amended Complaint a conclusory allegation that "PLM contends that … Assurance Company of America … [has] a duty to insure and indemnify D.R. Horton, and PLM's policy is in excess to these other carriers."  (Doc. 59, ¶ 16.)

Faced with this unorthodox procedural posture, Assurance filed a Motion to Dismiss, in which it argued that (i) PLM's Second Amended Complaint fails to establish an actual controversy between PLM and Assurance, inasmuch as it is couched in conclusory allegations unsupported by facts; and (ii) Assurance's policy unambiguously excludes coverage for D.R. Horton, in any event.  (Doc. 107, at 8-10.)  PLM opposes the Motion.

## II.    Analysis.

As noted, Assurance seeks dismissal of PLM's claims against it pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief can be granted.  Among Assurance's arguments for dismissal are that "PLM uses a conclusory allegation" as the sole basis of its claim against Assurance (doc. 107, at 8), and that "there is no legal relationship" between them (doc. 118, at 2.)  After careful review of the briefs on the Motion to Dismiss, the Court concludes that dismissal is warranted for two distinct and independent reasons.

### A.     *Twombly* Pleading Defect.

As an initial matter, PLM's Second Amended Complaint fails to comport with minimum pleading requirements as to the claims against Assurance.  To withstand Rule 12(b)(6) scrutiny and satisfy Rule 8(a), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," so as to "nudge[] [its] claims across the line from conceivable to plausible."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted).  "This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012).  Thus, minimum pleading standards "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  As the Eleventh Circuit has explained, *Twombly / Iqbal* principles require that a complaint's allegations be "enough to raise a right to relief above the speculative level."  *Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted).  "To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations … but must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010) (citations and internal quotation marks omitted).

Under any reasonable application of these principles, PLM has not satisfied baseline pleading requirements with respect to defendant Assurance.  The sum total of the Second Amended Complaint's factual allegations concerning Assurance is as follows: (i) Assurance is "believed" to have issued an insurance policy to Bethel Engineering, as to which D.R. Horton is an additional insured (doc. 59, ¶ 4); (ii) if PLM is deemed to owe a duty to defend or indemnify D.R. Horton, then PLM asks the Court to declare "what excess or *pro rata* share of the defense and litigation expenses" Assurance must pay (*id.* at 23); and (iii) "PLM contends that … Assurance … [has] a duty to insure and indemnify D.R. Horton, and PLM's policy is in excess" to that of Assurance (*id.*, ¶ 16).  As framed by this universe of allegations, PLM's pleading against Assurance is a conclusory claim that flunks *Twombly / Iqbal* review.  PLM has pleaded no facts that might reveal a plausible claim for relief against Assurance.  From reviewing the

Second Amended Complaint, it is impossible to discern why PLM "contends" that Assurance owes coverage to D.R. Horton in the *Saddler* Action, much less why PLM "contends" that its own policy is excess to Assurance's, or what (if any) facts or policy provisions PLM might be relying on as grounds for those unvarnished "contentions." Plaintiff has furnished nothing more than a blanket statement that this is so.

Rule 8(a), as construed by the Supreme Court in *Twombly* and *Iqbal*, requires much more in a pleading than a bald, conclusory claim that "I am entitled to relief because I say so," which is effectively all that PLM has pleaded here. As such, the Second Amended Complaint is deficiently pleaded against Assurance as a matter of law, and the Motion to Dismiss is properly granted on *Twombly* / *Iqbal* grounds.

### B. Discretion Not to Hear Declaratory Judgment Action.

Plaintiff's Second Amended Complaint also suffers from a more fundamental defect, insofar as it relates to PLM's claims against Assurance. This action is brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, which authorizes – but does not require – federal courts to declare the rights and legal relations of interested parties. *See Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (Declaratory Judgment Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so"). Indeed, the Act is properly "understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* at 287 (citations omitted). The proper exercise of such discretion is achieved on a case-by-case basis, turning on "considerations of practicality and wise judicial administration." *Id.* at 288; *see also Aetna Ins. Co. v. Transamerica Ins. Co.*, 262 F. Supp. 731, 732 (E.D. Tenn. 1967) ("The determinative factor is whether the declaratory action will probably result in a just and more expeditious and economical determination of the entire controversy.").

Upon careful consideration, the Court exercises this discretion not to declare the rights and legal relations as between PLM and Assurance for "what excess or *pro rata* share of the defense and litigation expenses" each might bear in the *Saddler* Action. Here is why: The crux of PLM's claim against Assurance is a request for judicial declaration apportioning coverage

obligations between these insurers relating to D.R. Horton's liability in the *Saddler* Action.  To date, however, there has been no finding of liability for D.R. Horton, and certainly no judgment entered against D.R. Horton, in the *Saddler* Action.  Nor has there been a finding that PLM owes any coverage to D.R. Horton.  The apportionment issues that plaintiff is asking this Court to referee as between PLM and Assurance will never materialize unless and until (i) PLM is found to owe coverage to D.R. Horton in the *Saddler* Action (which PLM steadfastly denies), and (ii) D.R. Horton is held liable in the *Saddler* Action.  Neither of these events has occurred, and it is entirely possible that neither might ever occur.  Thus, it strikes the Court as profoundly inefficient, unhelpful and ill-advised to expend litigant and judicial resources on a declaratory judgment action aimed at determining how insurance contributions should be apportioned as between PLM and Assurance if D.R. Horton is someday hit with an adverse judgment in the *Saddler* Action and if PLM is found to owe insurance coverage to D.R. Horton.  At the moment, the question that PLM is asking this Court to adjudicate as to Assurance is merely theoretical, academic and conjectural, based on contingencies that have not happened and might never come to pass.[2]

_____

[2]     While the foregoing discussion addresses apportionment of insurance indemnification obligations to D.R. Horton in the *Saddler* Action, the same reasoning holds true with respect to the duty to defend.  The Second Amended Complaint is devoid of any allegation that PLM is presently furnishing a defense to D.R. Horton in the *Saddler* Action.  To the contrary, D.R. Horton pleads in its Counterclaim that PLM "has not replied to Horton's request or otherwise provided it with a defense to the underlying action."  (Doc. 82, ¶ 20.)  PLM does not appear to dispute the assertion that it has not, in fact, furnished a defense to D.R. Horton.  For now, then, PLM is neither providing a defense to D.R. Horton nor paying its defense bills; therefore, PLM's demand that this Court declare whether other insurers would have to share in those defense costs if PLM is ultimately ordered to defend D.R. Horton is purely academic at this time, based on a set of hypotheticals that may or may not ever take place.  To the extent that PLM is asking the Court to declare the apportionment of defense costs that should be borne among it, Assurance and other insurers, such a declaration is theoretical unless and until (i) PLM is found to owe defense obligations to D.R. Horton in the first place (which PLM has denied), and (ii) PLM disagrees with other insurers as to the appropriate apportionment of defense costs at that time (which the Second Amended Complaint does not allege ever to have happened, as there is no allegation that PLM has conferred with other insurers over defense cost apportionment at all).  Stated differently, it is an open question at this time whether PLM owes a duty to defend D.R. Horton at all in the *Saddler* Action.  Entertaining full-fledged, resource-intensive, multilateral litigation as to whether some other insurer would be required to share the burden of those defense costs with PLM, and if so how much, if indeed PLM is someday found to have such a duty to defend would be grossly inefficient and wasteful because, as of right now, (Continued)

Courts have steadfastly resisted attempts by litigants to entangle them in such theoretical, conjectural matters under the Declaratory Judgment Act.  For example, in *American Fidelity & Cas. Co. v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co.*, 280 F.2d 453 (5th Cir. 1960), the plaintiff insurer sued a defendant insurer seeking a declaratory judgment that the defendant would be responsible for providing coverage to an additional insured under both policies (without *pro rata* apportionment) if that insured were ultimately held liable in an underlying damages suit.  The former Fifth Circuit opined that questions such as the insurers' respective liabilities to the insured (*i.e.*, "whether Pennsylvania has primary and American excess coverage, whether both are liable pro rata, or at all," and so on) were merely "academic" problems and that "it is not the function of a United States District Court to sit in judgment on these nice and intriguing questions which today may readily be imagined, but may never in fact come to pass."  *Id.* at 461.  On that basis, the *American Fidelity* court affirmed the dismissal of the complaint without prejudice because "the asserted controversy may never be, but when it is or what it is when it is, a proper court can then resolve those tangible controversies as the case might require.  The District Court was careful to make his dismissal without prejudice to those further rights, and it was well within its considered judicial discretion to decline to express legal opinions on academic theoreticals which might never come to pass."  *Id.*  The *American Fidelity* holding was "predicated on the traditional discretion of federal courts exercising jurisdiction over declaratory judgment actions."  *Edwards v. Sharkey*, 747 F.2d 684, 686 (11th Cir. 1984).  The lesson from *American Fidelity* is that courts are "cautioned against the exercise of jurisdiction in suits for declaratory judgment when the question of the apportionment of insurance coverage may never arise due to the lack of a judgment establishing the liability of the insured."  *Id.*[3]

---

the question of apportionment of defense costs among insurers other than PLM is of no more than speculative, academic interest.

[3]   Other courts have reached similar conclusions.  *See, e.g., Century Indem. Co. v. McGillacuty's, Inc.*, 820 F.2d 269, 270 (8th Cir. 1987) ("When an insured's liability has not yet been determined, a court should refrain from deciding which insurance company is liable for coverage, especially when … they are arguing about which is the primary carrier and which is the excess carrier."); *Travelers Indem. Co. v. Standard Acc. Ins. Co.*, 329 F.2d 329, 332 (7th Cir. 1964) (where one insurer sought declaration that another insurer was obligated to pay all sums that might be awarded against insured in personal injury action, opining that issue "is purely speculative and therefore not proper for decision in this declaratory judgment action"); (Continued)

Cutting through all the rhetoric from all the caselaw, the fundamental point is straightforward.  PLM has sued Assurance seeking a declaration that, if PLM is found to owe coverage obligations to D.R. Horton in the *Saddler* Action, and if D.R. Horton is found liable in the *Saddler* Action, Assurance is responsible for paying those obligations first.  Such a dispute may satisfy the "case or controversy" requirements of the Article III, Section 2 of the U.S. Constitution and the Declaratory Judgment Act,[4] but it is not the kind of case or controversy that

<hr>

*Nationwide Mut. Ins. Co. v. Fidelity & Cas. Co. of N.Y.*, 286 F.2d 91, 92 (3rd Cir. 1961) ("But the trial judge was right in refusing to settle all the relations of the insurers among themselves. … Each of these companies has insured some one or more of the persons involved in this Butler County litigation.  How that litigation will come out nobody knows at this time. … [A]t this time nobody is under any liability to pay.  Federal courts are not authorized to give advisory opinions and if we told the insurance companies their respective rights and duties against each other we certainly would be giving an advisory opinion.") (footnotes omitted); *Employers Mut. Cas. Co. v. All Seasons Window & Door Mfg., Inc.*, 387 F. Supp.2d 1205, 1211-12 (S.D. Ala. 2005) (following *American Fidelity* and observing that "any number of eventualities could prevent problems now academic from becoming actual," such as "the insured might never suffer an adverse verdict" or "the underlying action might narrow or even eliminate any coverage question" based on the nature of the verdict) (citations and internal marks omitted); *Companion Assurance Co. v. Alliance Assurance Co.*, 585 F. Supp. 1382, 1385 (D.V.I. 1984) (dismissing declaratory judgment action between insurers where "liability has not been established and a ruling as to the priorities of coverage of the other insurance carriers would amount to an advisory opinion"); *Government Emp. Ins. Co. v. Keystone Ins. Co.*, 408 F. Supp. 1185, 1188 (E.D. Penn. 1975) (dismissing declaratory judgment action between two insurers as to whose coverage was primary, reasoning that in the event liability was found in underlying proceedings, "GEICO may at that time seek a judicial determination of its claim that Keystone has the primary liability. This is not only the law of this Circuit but appears to be the preferable practice."); *Aetna*, 262 F. Supp. at 733 ("The federal courts have often held that actions for declaratory judgment under the Federal Declaratory Judgment Act should not be entertained where the rights of several insurers are in issue until there has been a judgment against the insured."); *Erie Indem. Co. v. Acuity, a Mut. Ins. Co.*, 2006 WL 2048310, *3-4 (N.D. Ga. July 19, 2006) ("[T]he issue presented in this declaratory judgment action involves a determination of primary versus secondary insurance coverage. … The issue of liability … has not been resolved in the state court action.  Thus, insurance coverage, primary or otherwise, has yet to, and may never, become relevant.  Yielding to considerations of judicial economy, the Court declines to rule on the coverage issue while the underlying liability action is still pending.").

[4]      "Congress limited federal jurisdiction under the Declaratory Judgment Act to actual controversies, in statutory recognition of the fact that federal judicial power under Article III, Section 2 of the United States Constitution extends only to concrete 'cases or controversies.'" *Atlanta Gas Light Co. v. Aetna Cas. and Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995) (citation omitted).

federal courts should exercise their discretion under the Act to hear.  *See, e.g., Aetna*, 262 F. Supp. at 732 ("An academic or theoretical declaration by this Court concerning future controversies that may never arise is not contemplated by the Declaratory Judgment Act.") (citation omitted).  If no adverse judgment were ultimately entered against D.R. Horton in the *Saddler* Action, then this declaratory judgment action as to which insurer(s) should pay that judgment and in what shares would be a waste of time.  Similarly, if this Court were to find that PLM owes no indemnity obligation to D.R. Horton in the *Saddler* Action, then protracted, hard-fought litigation over PLM's claims that Assurance must shoulder all or part of PLM's indemnity burden would be unhelpful and unnecessary.[5]

In short, it is the undersigned's opinion that PLM's declaratory judgment action against Assurance will not probably result in a just and more expeditious and economical determination of the entire controversy, and that considerations of practicality and wise judicial administration favor not deciding those claims at this time.  Under these circumstances, the Court exercises its discretion under the Declaratory Judgment Act not to declare the rights of PLM and Assurance as to their respective shares or apportionment of any defense or indemnity obligations that PLM might be found to owe D.R. Horton for any liability that it might ultimately incur in the underlying wrongful death action in state court.

### III.   Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1.      Assurance Company of America's Motion to Dismiss (doc. 107) is **granted**;

2.      In exercise of the undersigned's discretion pursuant to 28 U.S.C. § 2201 and given the *Twombly* pleading defect in the Second Amended Complaint, plaintiff's

---

[5]      The same is true on the duty to defend issue.  If PLM is held in this case not to owe a duty to defend D.R. Horton in the *Saddler* Action, then PLM's litigation with Assurance over how those defense costs should be apportioned between them would be of no consequence. The analysis might differ if PLM were paying D.R. Horton's defense costs at this time and wanted a declaration that Assurance was responsible for reimbursing all or part of those costs; however, that is not the operative scenario.  The Court's understanding is that PLM is presently not furnishing a defense to D.R. Horton, and that D.R. Horton has demanded a defense from multiple other insurance carriers, in addition to PLM; however, PLM seeks a declaratory judgment that Assurance should be required to pay all or part of those defense costs if PLM is someday found to owe D.R. Horton a duty to defend (and if such defense costs have not been borne by some other insurer in the meanwhile).

claims for declaratory judgment against Assurance are **dismissed without prejudice**, provided that nothing herein precludes or limits plaintiff's ability to renew such claims at an appropriate time if and when the underlying issues have advanced to a point where a declaratory judgment as to apportionment of insurance contributions between PLM and Assurance would be of more than academic or theoretical interest; and

3. The Clerk of Court is directed to **terminate** Assurance Company of America as a defendant in this action.

DONE and ORDERED this 5th day of January, 2016.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE